WILLIAM DOHERTY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.     December 4, 1917. — January 4, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Railroad, Trespasser or licensee.

In an action against a railroad corporation for personal injuries sustained from being run into by a train of the defendant operated by electricity on a local branch line leading to the seashore, when the plaintiff was crossing or had crossed the parallel tracks of the defendant and was on or very near the track on which the train that struck him was running, where the defendant's engineer in charge of the train testified that he had a clear view of several hundred feet and that he perceived the plaintiff crossing the tracks, and where there was other testimony that the train when a hundred and fifty or a hundred and sixty yards away slowed down and thereafter greatly increased its speed, it was *held* that there was evidence of negligence on the part of the defendant's engineer, but that there was no evidence of such misconduct, wilful, wanton, reckless or intentional as would make the defendant liable for the plaintiff's injuries if he was a trespasser or a mere licensee.

In the case described above there was evidence, that the plaintiff was about to take a train to return home from the beach and that he had been waiting in an open station or shed, when he saw the train that he wished to take approaching on the farther from the station of the two tracks, that the space between the station and the first track was filled in to the top of the rails, that the space in front of the station between the rails of the first track and the adjoining space between the two tracks also were filled in to the top of the rails, but that the space between the rails of the second track was not filled in and outside the rails of that track there was no filling and the ends of the sleepers were exposed, that beyond the ends of the sleepers there was a slight depression or gutter or path, beyond which was a riprap wall above the beach to protect the station and the tracks from the action of the sea, that when taking the train on the farther track the majority of persons got on the train from the station side but that persons also got in on both sides, that the plaintiff when he saw his train coming stepped from the platform of the station and crossed the first track and the space between the tracks and entered the space between the rails of the

farther track and, as he did so, saw that the train was close to him and jumped but was struck by the train. The plaintiff testified that "There was no crowd there or anything to force me to go over to that side to take the train, but I wanted to get on the right hand side and get a train. I went over there voluntarily and of my own accord." *Held*, that the plaintiff at the time of his injury was not a passenger and was a trespasser or at most a mere licensee to whom the defendant owed no duty other than to refrain from wilfully, recklessly or wantonly exposing him to danger.

In the case above described it was *said* that the evidence of the use by persons of the outer space in getting upon trains on the farther track merely tended to show that the defendant had tolerated such a practice without taking measures to prevent it, and did not tend to show an invitation from the defendant to use that space.

TORT for personal injuries sustained on September 5, 1915, near the Stony Beach station on the Nantasket branch of the defendant's railroad from being run into negligently by a train of the defendant when the plaintiff was alleged to have been a passenger of the defendant. Writ dated October 11, 1915.

The defendant's answer contained a general denial and an allegation that the plaintiff was guilty of negligence which contributed to his alleged injury.

In the Superior Court the case was tried before *Brown*, J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to order a verdict for it. The judge refused to do this. The defendant then asked the judge to make the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. Upon all the evidence the plaintiff was not in the exercise of due care.

"3. At the time of the accident the plaintiff was not a passenger."

"5. When the plaintiff stepped from the gravel fill between the two tracks on to the exposed sleepers or ties between the rails of the Pemberton bound track, he became a trespasser, or at most a mere licensee, and this was his *status* at the time of the accident."

The judge refused to make any of these rulings and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $600. The defendant alleged exceptions.

*Joseph Wentworth*, for the defendant.

*C. J. Muldoon, Jr.*, (*J. J. O'Hare* with him,) for the plaintiff.

PIERCE, J. On September 5, 1915, while crossing, or immediately upon leaving, the tracks of the electric railroad of the de-

fendant, the plaintiff was struck by and received physical injury from contact with the right hand running board or step of the first car of an electric train running from Nantasket Beach to Pemberton. The evidence would not warrant a ruling that the defendant had affirmatively proved that the plaintiff was not in the exercise of due care. *Patrick* v. *Deziel*, 223 Mass. 505, 508. *Nye* v. *Louis K. Liggett Co.* 224 Mass. 401, 404. *Regan* v. *Boston & Maine Railroad*, 224 Mass. 418. *Murphy* v. *Worcester Consolidated Street Railway*, 225 Mass. 264. *Winslow* v. *New England Co-operative Society*, 225 Mass. 576. *Creedon* v. *Galvin*, 226 Mass. 140. *French* v. *Mooar*, 226 Mass. 173. *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262. *Kelsall* v. *New York, New Haven, & Hartford Railroad*, 196 Mass. 554. *La Fond* v. *Boston & Maine Railroad*, 208 Mass. 451.

The testimony of the engineer that he had a clear view of seven hundred feet and that he perceived the plaintiff crossing the tracks, when taken with other testimony that the train slowed down when a hundred and fifty to a hundred and sixty yards away and thereafter greatly increased its speed, furnished some evidence of the negligence of the engineer, but was entirely inadequate to warrant a jury in finding that such misconduct was wilful, wanton, reckless or intentional.

The remaining question is whether the plaintiff was a passenger, trespasser or licensee when injured. The uncontroverted evidence bearing upon this question was as follows: Stony Beach station, at or near which the plaintiff was injured, "is an open shed approximately forty feet long, ten feet deep in the centre and six feet deep on the two ends. The station is more of a waiting shed than a regular station. The eaves overhang the building approximately two feet. The front of the station is about ten feet from the nearest rail. The space in front of the station between it and the nearest rail was filled with gravel to the top of the rail and the gravel fill extended for a distance of about two hundred thirty-five feet. There were two tracks and the space in front of the station between the rails of the nearer track was filled in even with the top of the rails for a distance of approximately ninety-five feet. The space in front of the station between the two tracks was filled in to the top of the rails for a distance of approximately two hundred thirty-five feet. The space between

the rails of the track farther from the station was not filled in and the ties or sleepers were exposed. The Nantasket bound track is the one nearer the station; the Pemberton bound track is the one farthest from the station. Outside the rails of the Pemberton bound track farther from the station there was no filling and the ends of the sleepers were exposed. Beyond the ends of the sleepers was a slight depression or gutter or path and just beyond that was a riprap wall to protect the station and tracks from the action of the sea, and beyond the riprap wall was the beach and then the ocean. The stones in the wall were of various sizes, shapes and distances from the track, the testimony being that they varied from two to six feet from the ocean side rail of the Pemberton bound track. The track is straight in front of the station or shelter shed. About one thousand feet toward Nantasket, from the Stony Beach shed, the track starts on a sweeping curve, which continues for several hundred feet."

On the day of the accident the plaintiff had come from his home in Boston to Stony Beach. Following his arrival he went with friends over the tracks and rocks and sat down on the beach a short distance from the water. After sitting there fifteen or twenty minutes, the plaintiff did not feel well and decided to go home. He walked up the rocks and across the tracks to the station for the purpose of taking a train to Pemberton. After sitting in the station five or six minutes he heard the noise of a train; he walked to the end of the platform, looked toward Nantasket and saw the train coming from that direction. It was bound for Pemberton which was where he desired to go. After again looking in the direction of the coming train he stepped from the platform, crossed the Nantasket bound track, then the space between that track and the Pemberton bound track (a distance of ten feet), and then entered upon the space between the rails of the last track. As he did so he saw the train was close to him. He jumped, and was struck by the right hand side of the train. He testified: "I had crossed over those rocks twice that day, once going down to the beach and once coming back. There was no crowd there or anything to force me to go over to that side to take the train, but I wanted to get on the right hand side and get a train. I went over there voluntarily and of my own accord."

There was evidence that during the summer of 1915 a great

majority of the people got on the train from the station side when the train was going to Pemberton, but there was also evidence that they got in on both sides.

We think the physical situation of the station, the fact that the space in front of the station between it and the nearest rail was filled with gravel to the top of the rail, the fact that the space between the rails of the track nearer the station was filled in even with the top of the rails, the fact that the space between the track nearer the station and the track farther from the station was filled in level with the rails, the fact that the space between the rails of the farther track was not filled in, the fact that the sleepers were uncovered and exposed and extended beyond the farthest rail, the fact that the cars overhung the space between the farthest rail and the rocks eighteen inches, and the fact that the path or gutter beyond the sleepers was but a depression worn out between the ties and the rocks, all together establish indubitably that the place to which the public in entering and leaving the trains was invited was the space made level for such purpose between the station and the nearer rail of the Pemberton bound track, and exclude plainly from such invitation the manifestly narrow, inappropriate and dangerous space between the ends of the sleepers and the rocks.

The evidence of use of the outer space goes no further than to show that the defendant had tolerated a practice without taking active measures to prevent it.  This is far from an inducement or invitation from the defendant to use that space.  *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225, 229.  *Legge* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 88.  *Hillman* v. *Boston Elevated Railway,* 207 Mass. 478.

It follows that the plaintiff was not a passenger at the time of the injury, and was a trespasser or, at most, a mere licensee, to whom the defendant owed no duty other than to refrain from wilfully, recklessly and wantonly exposing him to injury.  *Younger-man* v. *New York, New Haven, & Hartford Railroad,* 223 Mass. 29.  *Albert* v. *Boston Elevated Railway,* 185 Mass. 210.  *Kallio* v. *Worcester Consolidated Street Railway,* 222 Mass. 121, 123.

The motion to direct a verdict for the defendant should have been allowed.  The exceptions must be sustained and judgment entered for the defendant under St. 1909, c. 236.

*So ordered.*